Good morning, Your Honors. My name is Russell Handy, and I represent Michael Orlando. The essential facts in this case are pretty straightforward. My client is a person with a disability, and the defendants run and operate a racetrack. The racetrack has a clubhouse. For people who do not have disabilities, the process for buying a ticket and getting entrance to the clubhouse is straightforward. They buy their ticket, they head directly in. For persons like my client who are disabled, they cannot do that. There's only one accessible route of travel from the entrance to the clubhouse, and it involves navigating a locked door that's kept locked during all business hours. The process is that a person with a disability checks in at the ticket booth. They then contact the Office of Janitorial Services, who will then arrange to send down an escort, who will then meet the person with a disability at the entrance and escort them up to the locked door. At that point, they will either unlock this door, or they'll send for a security guard who has a key, who will unlock the door and allow them to gain entrance. This violates the ADA in two respects. First of all, the general prohibitions. I mean, it's unequal on its face, the treatment that they have and the access they have. And if you put this, I'd like you to consider, if you will, this in a different discriminatory context, in a racial one. After all, Title III of the ADA is modeled after Title II of the 1964 Civil Rights Act with respect to public accommodations. If, let's say a discreet... But the difference would be, would it not, if there were race discrimination here, there'd be a separate entrance for a non-white patron. Right. There are... If it was a non-disabled minority would enter the clubhouse the same way that white patrons would enter, would they not? Up the stairs and into the clubhouse. Right. There's different issues that are implicated on race than disability, but the language... One question. Has Mr. Orlando ever encountered the locked door where there was no escort and therefore no one to arrange to open the door for him? I don't believe so. I don't believe that's the case. So this alternative means of access has always worked for him? Yes. I mean, there's no question in this case that he can always ultimately gain access. And he hasn't even alleged that there's a substantial delay or that he misses a race because he's waiting or anything like that, has he? No, no. He hasn't. There's a delay. There's an argument about whether it's inordinate or not, obviously. I mean, we argue there shouldn't be any delay. He shouldn't have to be escorted or taken by the hand and taken up to the location. But you don't dispute that the stairs can't be removed at this point, right? You're not saying that the solution is that he should be able to have a ramp up the stairs? No, we don't believe it's readily achievable to provide a ramp. And so... And the thing is, interestingly enough, the specific prohibitions under the ADA that require physical access say only one route. There only needs to be one accessible route from the entrance to the clubhouse. So although there is a primary entrance that has stairs, technically, it does say that the accessible route should be the one that is the one that the general population uses to the extent feasible. But you're not contesting that it's not feasible, right? I mean, you've acknowledged that the stairs are there and can't be changed. Right. The stairs are there, can't be changed. We're focusing... So an alternative access route is permissible under the law, as you understand. Yeah, we wouldn't even call it an alternative route. It is the route. It is the accessible route. They're required to have one accessible route. That is the route through that locked door. Okay. So I guess since he hasn't encountered any delays, he hasn't missed any races, and an attendant has always been there to help him through the locked door, is it your position that the law requires that the door be unlocked at all times? Yes. The Department of Justice says just that, both in its implementing regulations and in the technical assistance manual says... Do our cases go that far? I thought that even the regulations acknowledged that there may be legitimate reasons such as security that would permit the owner to keep a door locked. For example, maybe a jewelry store would have a back entrance that was locked. That's correct. There's three different things that someone can rely on in order to the technical assistance manual says any... No, I don't think that's I guess where I'm having a difficult time. I don't read the regulation that way. I read the regulation as saying locked doors may be permissible under certain legitimate business purposes. Here, I understand that purpose to mean because you have to pay extra in order to get into the clubhouse, there has to be some means of preventing people who have not paid for access to the clubhouse who would otherwise simply walk through the unlocked door without paying. Isn't that the racetrack's justification for keeping this door locked? It is. That is their justification, but the regulations don't say that. The regulations are, I mean, we've cited numerous places, say very clearly. But why isn't that a security, I'll call it an exception, which the regulations do acknowledge? Oh, there is a security exception. The problem that we have... Let's talk about what's at stake here. It's $3 to gain entrance. Well, let's talk about the law. Let's try and figure out what the law requires. That's where I think we ought to focus the argument. That's where I'm focusing the argument. You say there's a security implication. I'm saying... You seem to be taking the position that a locked door is per se a violation of the regulations. I don't read the regulations quite that stringently because they do admit of exceptions. Okay. I guess our position is I want to think the law says the standard is that you can't have locked doors. There are exceptions to that. You can raise... If they posted an attendant there and kept the door locked and he unlocked the door anytime anybody showed up at one in the clubhouse, would that satisfy the act? Absolutely. If it was always unlocked to our clients... But it is always unlocked to your client, isn't it? He gets escorted and they unlock the door as he's going through. I think in your reply brief, you acknowledged that there could be an attendant at a locked door, but at that point, you're not saying you can never have a locked door. I don't even really understand the difference between the attendant and the escort. Yeah. Here's what we're saying. That door's locked. If someone makes their way over there, it's locked. Sorry. They have to arrange for someone to come and unlock the door for them. Every door can be unlocked. I mean, there's no question about that. Just like every other barrier can be overcome in some manner. What we're saying here is that my client shouldn't have to jump through the hoops of finding someone to unlock the door, right? Because the language says that you have to have locked... Has he ever had a problem? I mean, he gets there and I assume the person who sells him the ticket calls the person to escort him. And you said there's never been a delay. So I don't really understand why that's harder than asking the attendant at the door to open the door. I never said there wasn't a delay. I said there is a delay. It's automatic there's a delay. Someone else buys a ticket and heads straight in. Person who goes there, like my client... But you acknowledge you can't get around the stairs. So I mean, the difference I think that you're arguing about is someone sitting by the door versus someone walking up and unlocking the door. And I just am not quite sure, especially if you haven't alleged that it takes someone a very long time to get to the door, that there's difference between those two. No, the difference is this. If the proposal we have, if someone checks in and they're a person with a disability, they're headed to the wheelchair accessible entrance and the ticket booth calls ahead and that door is unlocked for them before they get there. And there's no delay. They don't have any difference in treatment or in access. I don't have a problem with that. Or if there's a CCT camera and someone's coming up and they're the person going through the accessible entrance and they unlock that door before the client gets there and they never have to navigate or deal with a locked door, no problem. Or if there's an attendant there... If Mr. Orlando is not alleging that he's ever been delayed for any appreciable amount of time because of the fact that an attendant is with him to get him through the door, I just don't see where the violation is here. But Your Honor, we're saying that there is a delay. They have to... We're saying... I said earlier that he ultimately gets access, but this is not an issue that the district court focused on and it would be a tribal issue whether the delay is inordinate. But he hasn't made it, I mean a tribal issue, but he hasn't established a fact of delay in any of the papers that I've reviewed. Yeah, so... So how do you get to trial on a factual dispute where you haven't made a prima facie allegation that there is a fact? Right. Our prima facie allegation is this. Earlier you said you read the regulations as saying that there can be exceptions to this locked door. Because the Department of Justice does say that there can't be locked doors. That locked doors are not... Do you quarrel with the TRAC's business reason for keeping the door locked because it is an area that requires the payment of an additional fee to get into? Yeah, in this case we quarrel with their argument that has to remain... That they... That the mechanism that they have is the only mechanism they can pursue to ensure controlled access. Because what... See, the problem is, is like... What's your alternative? What are you saying is more feasible? That there should be an employee stationed at that door during all hours that the clubhouse is in operation to immediately open the door for someone who wants to come through it? Is that your position? No, there's a number of solutions. Judge Carter in the oral argument said he... He goes, I came up with a solution, why don't you do this? I mean even he thought through the problem. There's something different than having to wait for someone to come down and escort to collect you, than to bring you up there to open the door. There's something different that can be done. For example, when someone... Doesn't the law permit, for example, in a disabled access to a building, doesn't... Don't the regulations provide for a buzzer or a bell that the person can activate in order to alert folks inside the building that the door needs to be opened? And doesn't that contemplate some period of minimal delay while somebody responds to the bell? There is no regulation whatsoever under the access standards, either 1991 or 2010, that arranged for a buzzer or for a bell. The only time that that comes up is when it is not readily achievable to provide code compliant access for some reason, and they have to turn to alternatives. And then there's... Isn't that our situation? Because you've said that the... You can't fix the staircase. So we're in a situation where you've acknowledged where we need another workaround because we can't get around the staircase. So this is their workaround, isn't it? No, it's not. Why not? Because the code only requires one accessible path of travel. This is the accessible path of travel. This isn't just a workaround the main staircase. This is the only required accessible path of travel they have to have. They don't have to have all of them, only one. But if they can't, then you get a workaround. And why isn't the staircase the route that now can't be fixed? And so they have a If the staircase were the only accessible, only route, and they could not fix it, and they had to come out with a workaround, for instance, taking someone through an employee area or through a kitchen area or something like that, that would be one setting. That's not what we have here. Why not? Because this is a route that they have designed and is available to people with disabilities and others who need to use the elevators. This is one of their routes into the facility, and therefore it has to be accessible. They only have to have one accessible route. I guess here's the disconnect. You're saying, here's the staircase one. Isn't this an alternative to that? And we're saying, why do we label it alternative? They're only required to have one accessible route. They can have five going into the Grant Clubhouse. I think they have three all together. They only have to have one accessible route. But I mean, everyone who goes that way has the locked door, right? It's not like the disabled person in the wheelchair is the only one who has the locked door if they're going that way. So everyone has the locked door. And I think that makes it not an accessible route, right? It's not a public route anyone can just walk through. Right. And that's the distinction, is that people who are not disabled have a route they can take that does not require a locked door. Right. And you acknowledge that that route that most people take can't be fixed. So now aren't we in the workaround alternative? But it's not a workaround because they have multiple entrances to this place. One of them is a staircase, right? That's not controlled. People can go in. There's no locked door. This one, which is the accessible route, involves an elevator, a lift, keeps a locked door. So in other words, you have path of travel going in. Ambulatory people can take one that doesn't involve a locked door. Persons with disabilities only have one option. It's a locked door. They have to call, arrange for an escort. But you said it's okay. It would be okay if that same locked door was there as long as there was someone sitting near it to open it. If it was unlocked whenever my client got there, it wouldn't be a locked door to him, is what I'm saying. Council, I'd like to direct your attention to Department of Justice Civil Rights Division publication under the Americans with Disabilities Act, the ADA guide for small businesses. And at page six of that document, the department writes, if the alternative accessible entrance is not left unlocked due to security concerns, you must provide an accessible way for notifying staff to open the door such as a buzzer or bell. Now, doesn't that contemplate that there might be some short delay while staff responds to the buzzer or the bell in order to unlock the door? Whenever it's not readily achievable to provide co-compliant access. But you've agreed that it wasn't feasible to put a ramp up next to the stairs. You've conceded that an alternative route may be provided here. And I don't understand why this doesn't adequately cover the situation so that the track is in compliance with the ADA. Let me, maybe I'm not making myself clear. So if you can't provide co-compliant access, then you're allowed to enter alternatives, right? That's the way the code is written. We're saying they can provide co-compliant access by leaving that door unlocked, having another mechanism for dealing with it so it's never locked to a person with a disability. That would be co-compliant. But that doesn't address the legitimate security concern that the business has articulated. And therefore, under the regulations as interpreted by the Department of Justice, the fact that there might be some small delay in responding and unlocking the door does not make the business in violation of the ADA. Do you want to leave some time for rebuttal? You're down to about 32 seconds. I don't think I'll have time to do anything significant. I just want to say one thing. Go ahead and respond. With respect to the security thing, that is typically a triable issue. Security issues implicate something that will allow you to- We're back to the problem we talked about before. You haven't alleged that I had to wait an hour for somebody to unlock the door. There's no evidence in the record. So is the court's position that you don't have to provide co-compliant facilities as long as there's just some modest inconvenience? The court's position is that you have to come to us with evidence to support a violation of the Act, and I don't see it here based on the alternative method that the racetrack has employed. That's the problem you're having. Your Honor, if I could have 30 seconds just to say something without- Our position is simple. You have to provide co-compliant access if you can do it. Here, they can do it. Yes, there might be security issues, but that does not require keeping it locked, forcing someone to go and contact someone to be escorted. There are other ways to do it that don't require that type of treatment. And we've talked about some of those, and the judge didn't find otherwise. There's been no finding that they couldn't do a different route. In fact, the judge in oral argument says, I can come up with ideas that would resolve both of your issues. Our only point is this. If they're going to say they cannot leave that door unlocked because of security issues, they need to prove that. This was a summary judgment motion. That wasn't a basis for the court's ruling. There's no evidence of that. There's plenty of other ways they can do it so that persons with disabilities don't have to deal with getting an escort to be walked up there and taken through a locked door. That's our position, Your Honor. All right. Thank you very much. We'll hear from counsel for the racetrack. Good morning, Your Honors. May it please the court. My name is Chris Wazurski. I represent, in this case, the Los Alamos Racing Association. You hit the nail on the head. There is no showing that there was an undue amount of time spent by Mr. Orlando in trying to get into the track. And he just admitted today, and I think it's in the briefs, that he was never denied access at any time. And in fact, their expert, Mr. Bishop, at excerpts 11 through 30, acknowledges that this alternative method that we provided, their expert, Mr. Orlando's expert, acknowledges that that alternative was fine and it meets ADA compliance. So their own expert admits it. They have no showing of any undue time. What's the difference between this case and the Clavo against the Rabian case where the district court for the Central District of California, that the turnstile case, you're familiar with that one. I'm sure you are. Yes. What's the difference between that case? Well, I think in this case, Your Honor, there is no showing that there's any block to the handicapped individual. As soon as he calls, he's admitted immediately. There's no showing that it takes longer to do that than the main entrance, which would be, I think, a different situation. They're admitted immediately through this door as soon as somebody comes down through the janitor service. And no showing that it takes any longer than one or two minutes. It's just a question of time, how long he has to wait? If he has to wait at all. I mean, if he called ahead, I suppose he wouldn't have to wait at all. But yes, it's just a question of time. In addition to that, the reason we have the locked door is, you hit on it, Justice Tillman, that the door is locked so that people who don't pay the extra fee are not admitted to this private area. Otherwise, there's no... And that's no different for somebody who's handicapped or someone who's not handicapped. You have to pay to get into this private area. We have a declaration from an individual who shows that it would be about $140,000 to man that door at all times. And that's because the racetrack is open 363 days a year. It also open at night. So total, you'd need three different staff, one of the day, one of the night, and one for relief, which he totals up our controller at about $143,574.55. So that cost is not reasonable. Council's admitted and given away that the ramp should replace the stairs. That's just not doable. It's not reasonable. How do we judge the cost of... I mean, you say it's not reasonable to spend that much to have someone there. Did you put on evidence of the total earnings of the track? Or I mean, how do we compare that cost to something else to figure out whether it's reasonable? Is there an absolute number for what's reasonable? I don't think we put on earnings of the total earnings of the track, but we did put on that the cost of doing that in the time just made it unreasonable. And they conceded that at the time in the lower court. So I don't even think that became an issue for them after that. So do you know what he's talking about when he says there were other alternatives that were discussed? I thought that was the one. So if you're saying they conceded that that one wasn't available, then I guess I'm not sure what other alternatives were discussed in the trial. I think in the lower court, the court mentioned that he could think of alternatives and he hoped that we could work something out. But the alternative, I think, was fine, especially once we saw that their expert conceded that that alternative, in his mind, met ADA requirements. We felt that we had done all we could. To station somebody there at all times is not feasible. It's too costly. To leave it unlocked is not feasible because then that allows entrance for everybody without having to pay the fee. So in our minds, we did what we could by reasonably accommodating. And there was no showing that he had to wait or that he never gained access. What was the evidence to show that it was not feasible to have an attendant there? Because I think we had Michael Mangy who testified that they had done that before and there wasn't very many people that were asking for entrance into the private area, number one. And number two, the cost, which was from the controller, who was Mr. Snyder, that the controller indicated it costs about $143,000 to station somebody there those were times when somebody needed the door unlocked. And I'm going to end early because I think that's all I have, unless there's some questions. Thank you very much. All right. Counsel, I'll give you a minute in rebuttal if you'd like to have the final word. Just a couple of things. First of all, we didn't concede at the lower court that it's not feasible or not readily achievable to have someone there. They used to do it. Mr. Mangy, the GM, said the reason they didn't do it is because they didn't have enough people going through there. Readily achievable, the analysis requires, it demands, that you compare the cost of something against the wherewithal, the financial wherewithal. That's never, wasn't a basis for the court's ruling, no evidence in the record for that. You seek their total profits so you could make that comparison and argument? No, in the excerpts of records, you'll see that they're answers to requests for admissions and they say we are not raising financial wherewithal at all as a defense. And so it just didn't become relevant. That wasn't a defense. But the problem... When they argued that it was $140,000 or whatever they just said, that was discussed in the trial court, wasn't it? It was, but it wasn't... What do you mean by they didn't raise that as a defense? We did requests for admissions. It's in the excerpts of record. We said, are you going to raise your financial wherewithal as a defense? They said no. And so we didn't demand those financial documents. But once they had this $140,000 number or whatever it was exactly, did you move to compel their total profits? No, it's meaningless. It's meaningless. Because it's not compared against financial wherewithal. Saying something costs X. If you can't compare it to Y, which is financial wherewithal, you can't put forward in the formative defense of readily achievable. So when they talk about it, they're just talking about the general nature, the feasibility. So it's an argument that doesn't have much. But our point was there was other things. We don't need someone to be there all the time. There's simple solutions. So what are you saying should happen? What we think should happen is when someone checks in and they know they have to use the accessible route, the elevator, that they shouldn't have to wait for an escort or be escorted. Even that is problematic. Because the door should be unlocked, right? Yeah, they just call ahead. They just simply, the ticket booth, just like they call ahead to the Office of Janitorial Services, just calls ahead and says, hey, we have someone coming up. Is the route easy to find without an escort? Is it well signed? And if it's not, they're required to have the directional signage. But it is. We're asking feasibility. Yeah, yeah. I mean, I have no idea, you know, from the entry gate, how, I assume it involves an elevator. But I don't know how you get to the elevator. Yeah, it's well signed. And if it's not, they're required to. It's feasible to have a directional path. They can just call ahead and say, someone's coming up with a disability, wheelchair user, someone with a walker, like my client. Please make sure that door's unlocked when they get there. I mean, if there's someone that sneaks in somehow and doesn't pay the $2, which is the fee to get into the clubhouse, I don't think that should trump the rights of persons with disabilities to be able to pretty much have ready access, which is what the law requires. It's why the DOJ said there can't be unlocked doors. They have to maintain things in a manner that's readily accessible. Well, the DOJ says, though, if that were the case, then they wouldn't say anything about buzzers and bells. Your Honor, I can read it to you. You don't have to read it. I can read it for myself. And you and I are reading it differently. The technical assistance manual says, doors must remain unlocked during all business hours. Unless there's a legitimate security reason, in which case, then you provide things like methods of alerting staff inside to unlock the door. But who says that there's a legitimate security reason? We're just going around it. I know, it's a tribal issue. Your time is up. Thank you very much. The case just argued is submitted. Thank you very much. Very well.
judges: Tallman, Friedland, Faber